# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION


CONNIE A. HYSMITH, et al.,

      Plaintiffs,

v.                                                    Case No. 3:04cv427/MCR/EMT

WELDING SERVICES, INC., et al.,

      Defendants.

_____/

## O R D E R

Pending before the court are the motions to dismiss of Defendants Welding Services, Inc. ("WSI"), First Reserve Corporation ("First Reserve") and Aquilex Services Corporation ("Aquilex") and the motion to quash service of Defendants Cockerill Mechanical Industries ("CMI") and CMI Welding Services ("CMI Welding"). Plaintiffs Connie Hysmith ("Hysmith") and Jennifer Pope Dunn ("Dunn") have filed responsive memoranda in opposition to each of the defendants' motions. The court heard oral argument on these motions and the parties have filed supplemental memoranda as directed by the court. For the reasons stated below, the court GRANTS the defendants' motions to dismiss and the motion to quash.

<u>Background</u>

The events giving rise to the instant action occurred in September 2003. At that time, Oscar David Hysmith and David Pope were working on a maintenance project at a power plant located in the Netherlands. On or about September 27, 2003, both men were seriously injured and later died as a result of injuries sustained when the scaffolding on which they were working collapsed. Hysmith and Dunn, personal representatives of the decedents' estates, originally filed this wrongful death action in the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida

on October 22, 2004.  Defendants WSI, First Reserve and Aquilex removed this case to federal court on December 2, 2004, on the basis of diversity jurisdiction.[1]

Discussion

**1. *Defendant WSI's Motion to Dismiss for Lack of Subject Matter Jurisdiction***

Defendant WSI moves to dismiss the claims against it for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Subject matter jurisdiction can be challenged on a motion brought pursuant to Rule 12(b)(1) either facially or factually.  Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1260-61 (11th Cir. 1997).  Facial attacks on jurisdiction presume the allegations in the complaint are true and test whether those allegations are sufficient to establish subject matter jurisdiction.  Id.  A facial attack is confined to the four corners of a complaint; no evidence is considered.  Id.  "'Factual attacks', on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'"  Id. (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).  On a factual attack, the defendant bears the burden to produce evidence to contradict plaintiff's allegations.  Sinaltrainal v. The Coca-Cola Co., 256 F.Supp.2d 1345, 1351 (S.D. Fla. 2003).  Once a defendant meets this burden, plaintiff's allegations no longer carry a presumption of truthfulness and the court is free to evaluate for itself the merits of the jurisdictional claims.  Id. (citing Scarfo v. Ginsburg, 175 F.3d 957, 960 (11th Cir. 1999)).

On a factual attack of subject matter jurisdiction a court's authority to make findings of fact and weigh the evidence depends on whether the attack also implicates the merits of the plaintiff's cause of action.  Garcia, 104 F.3d at 1261.  If the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's case, then "no presumptive truthfulness attaches to plaintiff's allegations and the existence of disputed material facts will not preclude the trial court from evaluating

---

[1] In their Notice of Removal, defendants WSI, First Reserve and Aquilex note that defendants CMI and CMI Welding Services have not been properly served with state court process and therefore need not have joined in the notice.  (Doc. 1, p. 3, ¶¶ 4, 5).

for itself the merits of jurisdictional claims." Id.  However, when the attack on subject matter jurisdiction also implicates an element of the cause of action the proper course for the court, "is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of plaintiff's case." Id.  WSI's motion in this case presents a factual attack on the court's subject matter jurisdiction and is based on the argument that plaintiff's claims against WSI are barred under the exclusivity provision of the Georgia Workers' Compensation Act ("GWCA"), which provides the sole remedy for benefits for the decedents' injuries.  This challenge does not implicate an element of the plaintiff's cause of action so the court is free to consider matters outside the pleadings in making its decision.

WSI is a corporation organized under the laws of Georgia with its principal place of business located in Norcross, Georgia.[2]  Decedents Oscar David Hysmith and David Pope began working for WSI in 2002 and 2001, respectively.  As part of their duties, decedents Hysimth and Pope were dispatched to the Amercentrale Power Plant in Geertruidenberg, Netherlands in September 2003.  While there, the scaffolding upon which they were working collapsed causing injuries that resulted in their deaths.  On September 30, 2004, WSI submitted worker's compensation claims on behalf of Hysimth and Pope to its insurance carrier so that plaintiffs could begin receiving benefits.  WSI never challenged plaintiffs' right to receive workers' compensation benefits and as of the date of filing of this action, plaintiffs had accepted and in fact continue to accept such benefits from WSI.[3]  In their response, plaintiffs agree that the decedents were performing work for WSI at the time they were injured.  Plaintiffs argue, however, that the decedents were not "employees" of WSI but instead were employees of their union hall working under contract with WSI and thus were not "employees" of WSI at the time they suffered their fatal

---

[2] These facts are derived from WSI's motion to dismiss and are undisputed by plaintiffs.

[3] Plaintiffs each receive a weekly payment of $425.00 and such benefits are payable up to $125,000.00.  As of November 29, 2004, Hysimth had received $26,775.00 and Pope had received $27,200.00. (See doc. 4, p. 4; Ex. C, ¶ 9).

injuries.  Consequently, plaintiffs assert that their claims against WSI do not fall within the scope of the GWCA.[4]

As a threshold matter, the court must determine which state law applies to plaintiffs' claims against WSI. WSI contends that the GWCA governs the court's analysis of subject matter jurisdiction and thus urges the court to apply Georgia law on this question.   Plaintiffs, on the other hand, argue in their supplemental memorandum that Florida law should govern.[5]  A federal court sitting in diversity must apply the choice of law rules of the forum state in which it sits.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Because this case is before the court on diversity jurisdiction, the court will apply Florida's conflict of law principles in determining whether Florida, Georgia or Dutch law governs its analysis of subject matter jurisdiction.  See Plath v. Malbranche, 351 F.Supp.2d 1338, 1341 (M.D. Fla. 2005) (citing Allstate Ins. Co. v. Cohessy, 32 F.Supp.2d 1328, 1330 (M.D. Fla. 1998); Erie R.R. v. Tompkins, 304 U.S. 78 (1938)).

Under Florida law, a court makes a separate choice of law determination as to each issue under consideration.  Northland Casualty Co. v. HBE Corp., 145 F.Supp.2d 1310, 1311 (M.D. Fla. 2001).  Florida applies the "significant relationship"

---

[4] At the conclusion of oral argument held on May 31, 2005, the court directed the parties to file supplemental memoranda on the application of the Georgia Workers' Compensation Act and its exclusivity provision relative to all defendants.  All parties have filed supplemental memoranda as directed.  (See docs. 130, 131, 132).

[5] Plaintiffs advocate application of Florida law largely based on an intentional tort exception to the exclusivity provision of the Florida Workers' Compensation Act.  Under the Florida statute, an employer who secures worker's compensation coverage for its employees receives extensive immunity from suit by injured workers.  Immunity is lost, however, if the employer engages in an intentional act designed to cause, or substantially certain to cause, injury or death to an employee. Byers v. Ritz, 890 So.2d 343, 346 (Fla. 3d DCA 2004).  Plaintiffs argue that this exception would apply were the court to find that Florida law governs the issue of subject matter jurisdiction in this case.  For the intentional tort exception to apply, an employee must show that an employer either exhibited a deliberate intent to injure or engaged in conduct that was substantially certain to result in injury or death.  See Feraci v. Grundy Marine Construction Co., 315 F.Supp.2d 1197, 1205 (N.D. Fla. 2004).  Plaintiffs claim that the second prong of the exception (the "substantial certainty" standard) would apply to prevent WSI from having immunity from suit in this case.  As support for their argument, plaintiffs assert that WSI is responsible for negligently designing the scaffolding and failing to adequately inspect the work site; and that because of this WSI should have known that bodily injury or death was substantially certain to result from someone's use of the scaffolding for sandblasting. Given the court's finding infra on the applicability of Georgia law on this issue, plaintiffs' argument as to the applicability of this exception to Florida law is moot and something the court need not address further.

test set forth in § 145 of the Restatement (Second) of Conflict of Laws ("the Restatement") to resolve choice of law issues arising from tort claims. Id. at 1312; Plath, 351 F.Supp.2d at 1341; Bishop v. Fla. Specialty Paint Co., 389 So.2d 999, 1001 (Fla. 1980).  Section 145 of the Restatement provides:

> (1) The rights and liabilities of the parties with respect to a particular issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrences and the parties under the principles of § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place where the injury occurred;
> (b) the place where the conduct causing the injury occurred;
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971); Mezroub v. Capella, 702 So.2d 562, 565 (Fla. 2d DCA 1997); see also Digioia v. H. Koch & Sons, 944 F.2d 809, 812 (11th Cir. 1991).   Section 6 of the Restatement addresses the policy considerations underlying the choice of law test and provides that:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
> (a) the needs of the interstate and international systems;
> (b) the relevant policies of the forum;
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
> (d) the protection of justified expectations;
> (e) the basic policies underlying the particular filed of law;
> (f) certainty, predictability and uniformity of the result; and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971); see also Digioia, 944 F.2d at

812; Plath, 351 F.Supp.2d at 1341.  Florida does not have a statutory directive regarding choice of law and therefore the court will apply the four factors of the significant relationship test set forth in § 145(2) of the Restatement in deciding which law to apply.  Digioia, 944 F.2d at 812.

Application of these four factors leads this court to conclude that Georgia's workers' compensation law  should be applied to the question of whether plaintiffs' claims against WSI are barred.  Although the first two factors of the significant relationship test; i.e., the place of injury and the place where the conduct causing the injury occurred, suggest application of Dutch law, these two factors are of minimal significance to the court's choice of law analysis when considered in conjunction with the remaining factors discussed below.[6]  See Bishop, 389 So.2d at 1001 ("the state where the injury occurred may have little significance for the cause of action" and other "factors may combine to outweigh the place of injury as a controlling consideration").  The third factor of the significant relationship test looks at the domicile, residence, nationality, place of incorporation and place of business of the parties.  The record shows that WSI is a Georgia corporation with its principal place of business in Norcross, Georgia.  Plaintiff Hysmith is a resident of Florida and plaintiff Pope is a resident of Nebraska.[7]  WSI, Hysmith and Pope are all residents of the United States.  Given these facts, no one forum initially appears to have a more significant interest than the other.  However, when considered in light of the fourth factor, the place where the relationship between the parties is centered, the balance easily tips in favor of Georgia law.  The decedents were employees of a Georgia corporation, the project on which they were working at the time of their

---

[6] Although the scaffolding accident resulting in decedents' fatal injuries occurred in the Netherlands, neither party advocates application of Dutch law to this issue.  As a result, the court considers only whether Florida or Georgia possesses the greater interest in having its workers' compensation law govern the question of subject matter jurisdiction over plaintiffs' claims against WSI in this case, and in so doing, will apply the general conflict of law principles set forth in § 6 of the Restatement and the principles specific to tort claims set forth in § 145 of the Restatement.  Walker v. Paradise Grand Hotel, Ltd., 2003 WL 21361662 at *3 (S.D. Fla. 2003).

[7] The court notes that the plaintiffs make no argument that Nebraska law should apply in this case.

deaths was carried out in the course of their employment relationship with a Georgia employer, and the plaintiffs have received and continue to receive workers' compensation benefits from Georgia pursuant to Georgia law.  On the precise issue of which state's workers' compensation law should be applied to determine whether the court has subject matter jurisdiction this fourth factor is overriding.  Thus, the court finds that Georgia has the more significant relationship to the question of subject matter jurisdiction over plaintiffs' claims against WSI in this case and will apply Georgia workers' compensation law in resolving this issue.[8]  See Florida Steel Corp. v. Whiting Corp., 677 F.Supp. 1140, 1141(M.D. Fla. 1988).

Under Georgia law, WSI is a statutory employer subject to the directives of the GWCA.  See O.C.G.A. § 34-9-1(3).  A compensable injury under this act is defined as one "arising out of and in the course of the employment." O.C.G.A. § 34-9-1(4).  The GWCA contains an exclusivity provision that provides in relevant part:

> The rights and the remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death.

O.C.G.A. § 34-9-11(a).  The exclusive remedy provision of the GWCA, by its express terms, applies whether the employee is injured or killed, "supplanting the common law with an absolute liability of an employer, and fixed entitlements for an employee and 'his personal representative, parents, dependents, or next of kin, at common law

---

[8] Plaintiffs contend that the policies of the forum (Florida) and the basic policies underlying workers' compensation law favor application of Florida law.  The court finds these arguments unavailing.  The overall purpose of the Florida Worker's Compensation Act is to provide employees with compensation for on-the-job injuries, regardless of fault, in exchange for giving employers immunity from civil suits.  Byers, 890 So.2d at 346 (citing Eller v. Shova, 630 So.2d 537, 542 (Fla. 1993)); see also Florida Erection Servs., Inc. v. McDonald, 395 So.2d 203, 209 (Fla. 1st DCA 1981).  A primary purpose of Georgia's workers' compensation law is to enable an employee to recover payment from his employer for his injuries on the job without regard to issues of negligence or assumption of risk, thus assuring the employee of some compensation for the injury, and, on the other hand, assuring the employer that its liability will be limited.  Smith v. Gortman, 403 S.E. 2d 41, 42 (1991) (citing Karimi v. Crowley, 172 Ga. App. 761, 762 (1984); Horn v. Planters' Prods. Co., 40 Ga.App. 787(1929)).  Thus, the policies of the forum and the other interested state (Georgia) are similar and do not aid in the determination of the significance of one state's law over the other.  Equal policy considerations and a plaintiff's residence in the forum are too attenuated in comparison to Georgia's relationship to, and interest in, the issue at hand to warrant application of Florida law.  Plaintiffs provide no other support for their contention that Florida has the more significant relationship to the instant action.

or otherwise'." O.C.G.A. § 34-9-11(a); <u>Gortman</u>, 403 S.E.2d at 42.  Because WSI is subject to the GWCA and the decedents' injuries occurred in the course of their employment with WSI,[9] the exclusivity provision of the GWCA applies and the plaintiffs' sole remedy is compensation pursuant to the terms of this statute.  <u>See</u> O.C.G.A. § 34-9-1(4), (11).  Accordingly, this court lacks subject matter jurisdiction over WSI and its motion to dismiss on this ground will be granted.

## 2. Defendants First Reserve and Aquilex's Motion to Dismiss for Lack of Personal Jurisdiction

Defendants First Reserve and Aquilex move to dismiss the claims against them for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[10]  To survive a motion to dismiss for lack of personal jurisdiction

---

[9] Regarding plaintiffs' argument that the decedents were employees of their union hall rather than WSI, a review of the record shows that plaintiffs' refute their own argument.  In subsequent pleadings filed in response to motions to dismiss by other defendants, plaintiffs concede that "decedents were employed by Defendant Welding Services, Inc."  Plaintiffs cite no evidence or legal authority to demonstrate that the decedents were considered employees of their union hall or that, even if they were found to be so, such a finding would permit them to circumvent application of the exclusivity provision of the GWCA, which defines an "employee" as "every person in the service of another under any contract of hire or apprenticeship, written or implied."  O.C.G.A. § 34-9-1(2).  Thus, even if the decedents were technically "employees" of their union hall and performing work for WSI pursuant to a contract for hire, the GWCA would still provide the sole remedy for plaintiffs in this case.  <u>See e.g.</u>, <u>Coca-Cola v. Nicks</u>, 215 Ga. App. 381, 382 (1994) (holding that, under "borrowed servant" doctrine, the exclusive remedy available to employee who was on loan to defendant employer by temporary services agency was under workers' compensation law).

[10] In their motion to dismiss, defendants also claim that plaintiffs have not sufficiently pled their jurisdictional allegations because they failed to specifically state what subsection of the long-arm statute they rely on to support their argument and that the amended complaint should be dismissed on this ground alone.  Defendants cite to <u>Taylor Forge Int'l Inc. v. Specialty Maint. & Constr., Inc.</u>, 685 So.2d 1360, 1361 (Fla. 2d DCA 1996) to support their argument that plaintiffs must specify in their amended complaint which subdivision of the long-arm statute they rely on for personal jurisdiction.  <u>Taylor Forge</u> states that, before a court can exercise jurisdiction over a nonresident defendant under the long-arm statute, the basis for jurisdiction must be alleged with specificity in the complaint.  <u>Id.</u>  In that case, the court found that the plaintiff's complaint did not allege any of the requirements of the long-arm statute that would have permitted the Florida courts to exercise jurisdiction over the nonresident defendant corporation.  The only connection to Florida mentioned in the complaint was that Taylor Forge was to supply certain goods and materials to Specialty, a Florida corporation with its principal place of business in Polk County, Florida.  The court found that the complaint did "not even make a bare allegation that Taylor Forge is doing business in the state."  <u>Id.</u>

Unlike the complaint in <u>Taylor Forge</u>, the complaint in the instant case specifically alleges that First Reserve and Aquilex are conducting business activities in Florida.  While it is true that the complaint fails to allege that such activities are conducted through their subsidiaries and that plaintiffs do not state the particular subsection of the long-arm statute they rely upon as a basis for personal jurisdiction, this is an insufficient basis for the court to simply dismiss the complaint as defendants request.  See <u>Evans v. McClain of Georgia, Inc.</u>, 131 F.3d 957, 964 n.2 (11th Cir. 1997) ("A complaint need not specify in detail the precise theory giving rise to recovery.  All that is required is that the defendant be on notice as to the claim being asserted against

when no evidentiary hearing is conducted, the plaintiff must establish a prima facie case of jurisdiction over the nonresident defendant sufficient to defeat a motion for directed verdict.  **Precision Software Servs., Inc. v. Fortune Fin. Sys., Inc.**, 1998 WL 1759759 at *3 (M.D. Fla. 1998) (citing **Cable/Home Communication Corp. v. Network Prods., Inc.**, 902 F.2d 829, 855 (11th Cir. 1990)).  In determining whether a prima facie case has been established, the court must accept the facts in the complaint as true to the extent they are not controverted by defendant's affidavits.  **Lauzon v. Joseph Ribkoff, Inc.**, 77  F.Supp.2d  1250,  1253-1254  (S.D. Fla. 1999);  **Cable/Home Communication**, 902 F.2d at 855.  Where the evidence conflicts, the court is required to view all reasonable inferences in plaintiff's favor.  **Id.**  Once the plaintiff pleads sufficient material facts to support the exercise of **in personam** jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other competent evidence.  **Lauzon**, 77 F.Supp.2d at 1254 (citing **Prentice v. Prentice Colour, Inc.**, 779 F.Supp. 578, 585-586 (M.D. Fla. 1991)).  If the defendant sustains his burden, the plaintiff is required to substantiate the allegations in the complaint by affidavits or other competent evidence and may not simply reiterate the factual allegations presented in the complaint.  **Id.** (citing **Prentice**, 779 F.Supp. at 586; **Murphy v. Republic Health Corp.**, 645 F.Supp. 124 (S.D. Fla. 1986)).

The Eleventh Circuit has developed a two-part analysis to determine if personal jurisdiction exists over a nonresident defendant.  **Precision Software Servs.**, 1998 WL 1759759 at *4 (citing **Cable/Home Communication**, 902 F.2d at 856).  First the court must examine the jurisdictional issue under the forum state's long-arm statute.  **Id.**  Second, the court must determine whether "minimum contacts" exist to satisfy the Due Process Clause of the Fourteenth Amendment such that

---

him and the grounds on which it rests."); see also Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 604 (5th Cir.1981)("The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim.").  The amended complaint, albeit vaguely, asserts jurisdiction pursuant to § 48.193(2) in that it states that both First Reserve and Aquilex "conduct business and engage in activities throughout the United States, including systematic and continuous business contacts with the State of Florida, subjecting [them] to the general jurisdiction of courts of the State of Florida."  (Doc. 28, p. 3, ¶ 5; p. 6, ¶ 6).  Accordingly, the court will not dismiss the complaint on this ground.

"maintenance of the suit does not offend traditional notions of fair play and substantial justice" as set forth in  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).[11] Id. (citations omitted).  Only if the court determines there is a basis for asserting personal jurisdiction under the long-arm statute does it consider the due process question.  Nida Corp. v. Nida, 118 F.Supp.2d 1223, 1228 (M.D. Fla. 2000).

The Florida long-arm statute provides for two types of personal jurisdiction: specific jurisdiction conferred under § 48.193(1) and general jurisdiction conferred under § 48.193(2).[12]  Miller v. Berman, 289 F.Supp.2d 1327, 1331 (M.D. Fla. 2003) (citing Northwestern Aircraft Capital Corp. v. Stewart, 842 So.2d 190, 193 (Fla. 5th DCA 2003) (internal citations omitted)).   More specifically, section 48.193 allows courts sitting in Florida to obtain jurisdiction over a nonresident if the nonresident:

> (1)(a) operated, conducted, engaged in, or carried on a business or business venture in this state or has an office or agency in this state...
> ...
>
> (2) engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

See Fla. Stat. §§ 48.193(1)(a); 48.193(2); Snow v. DirecTV, Inc., 2005 WL 1226157 at *1.  A court may exercise specific jurisdiction over a nonresident defendant only when the defendant's contacts with the forum state arise from or are directly related to the cause of action.   Norwood v. Teather, 2005 WL 723863 at *3 (citing Helicopteros Nacionales de Colombia S. A. v. Hall, 466 U.S. 408, 414 (1984)).  For purposes of general jurisdiction, however, connectivity between the cause of action

---

[11]  In Florida, the minimum contacts requirement is satisfied if the defendant "purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state."  Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So. 2d 716, 719 (Fla. 4th DCA 1998); see also Burger King v. Rudzewicz, 471 U.S. 462 (1985); Hanson v. Denckla, 357 U.S. 235 (1958).

[12]  Florida's long-arm statute is to be strictly construed.  Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996) (citing Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 891 (11th Cir. 1983)).

and the forum state is not required, and a court may exercise jurisdiction over a nonresident defendant even though the suit does not arise out of the nonresident's activities in the forum state.  <u>Helicopteros</u>, 466 U.S. at 414-415.

Plaintiffs assert that this court has personal jurisdiction over First Reserve and Aquilex on a theory of general jurisdiction.  Section 48.193(2) of the Florida long-arm statute provides that a nonresident defendant who is "engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2).  Because the extent of the Florida long-arm statute is governed by Florida law, federal courts are required to construe it as would the Florida Supreme Court.  <u>Sculptchair</u>, 94 F.3d at 627.  Florida courts have held "substantial and not isolated activity" to mean "continuous and systematic general business contact" with Florida.  <u>Autonation, Inc. v. Whitlock</u>, 276 F.Supp.2d 1258, 1262 (S.D. Fla. 2003)(citing <u>Woods v. Nova Cos. Belize Ltd.</u>, 739 So. 2d 617, 620 (Fla. 4th DCA 1999)).  The "continuous and systematic" contacts requirement is sufficient to fulfill the constitutional due process requirement of "minimum contacts."  <u>Id.</u>  Thus, if a plaintiff can show "continuous and systematic" contacts by the nonresident defendant with Florida the federal minimum contacts standard is satisfied and the court need not consider the due process question.  <u>Woods</u>, 739 So. 2d at 620.

First Reserve is a private equity firm with special emphasis on the energy industry which serves as an advisor to certain private equity funds within that industry.  First Reserve is a Delaware corporation with its principal place of business in Connecticut.  Aquilex was formed to assemble a platform of complimentary businesses that provide outsourced maintenance, repair and overhaul services and new and retrofit equipment to power, petrochemical, refinery, pulp and paper, and other heavy industries.  Aquilex is a Delaware corporation with its principal place of business in Georgia.  First Reserve and Aquilex do not have any significant contact with Florida as evidenced by the following: neither defendant is licensed to do

business in Florida nor do they maintain a registered agent for service of process in Florida; neither corporation conducts any solicitation, advertising, marketing or other sales promotion activities in Florida nor do they maintain a telephone listing or post office box in Florida; neither defendant has any offices, real estate, interest in property, assets or bank accounts in Florida; neither defendant owns any real property in Florida nor do they own, use or possess a mortgage or other lien on real property in Florida; and neither defendant has ever filed suit in Florida nor has any Florida court previously found or exercised personal jurisdiction over either First Reserve or Aquilex.  Moreover, neither First Reserve nor Aquilex was a party to any contract related to the construction project at the Amercentrale Power Plant in Geertruidenberg, Netherlands on which the decedents were working at the time they were injured, nor did either defendant supply any labor, materials or services for use on the project.  Finally, neither First Reserve nor Aquilex participated in or supervised any of the allegedly negligent acts stated in paragraph fourteen of plaintiffs' complaint. More specifically, neither of these defendants was responsible or obligated in any way for the training of the decedents; the construction, maintenance or cleaning of the scaffolding; providing sandblasting operations on the project; or providing safety equipment for the project.

Plaintiffs do not dispute the absence of direct contact between First Reserve and Aquilex and the State of Florida.  Plaintiffs argue however that jurisdiction nonetheless exists based on the activities of First Reserve's and Aquilex's subsidiaries in Florida.  The alleged Florida subsidiaries referred to by plaintitffs are Wheelabrator Air Pollution Control, Inc., ("Wheelabrator") and Dresser, Inc., ("Dresser").[13]  Wheelabrator is a registered for-profit foreign corporation with the State of Florida.  Wheelabrator designs, engineers and supplies air pollution control equipment and related services to industrial and power facilities.  According to the record, Wheelabrator has employed Florida residents and paid taxes in Florida prior to and subsequent to its acquisition by Aquilex as part of its regular ongoing

---

[13]  Neither Wheelabrator nor Dresser are parties to the instant action.

business.[14]  Dresser operates globally and is engaged in three business segments of the energy industry: flow control, measurement systems and power systems.  Its products include natural gas engines, rotary blowers and vacuum pumps.  Dresser's products and services are marketed primarily under various trade names including Waukesha, Roots, Wayne and Flow Solutions.  Dresser Waukesha has a distributor for its products in Pompano Beach, Florida.  Dresser Roots has three authorized distributors located in Jacksonville, Florida, Coral Springs, Florida, and Lakeland, Florida.  Dresser Wayne lists two sales offices  in Boca Raton, Florida and Palm Coast, Florida and has a total of ten distributor locations in Florida.  Dresser Flow Solutions has two business units located in Boca Raton, Florida and Coconut Creek, Florida.[15]

In this case, plaintiffs argue that Wheelabrator and Dresser are subsidiaries of First Reserve and/or Aquilex and that the activities of these subsidiaries in Florida provide a sufficient basis for a finding of general jurisdiction over First Reserve and Aquilex pursuant to the Florida long-arm statute.  It is well established that when a parent corporation and a subsidiary are separate and distinct corporate entities, the presence of one in the forum state may not necessarily be attributed to the other. Exter Shipping Ltd. v. Kilakos, 310 F.Supp.2d 1301, 1313 (N.D. Ga. 2004) (citing Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000); Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333,337 (1925)).  Generally, a foreign parent corporation is not subject to jurisdiction in a forum state simply because its subsidiary is doing business there.  Id.; Consolidated Dev. Corp., 216 F.3d at 1293.  "On the other hand, if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent and the latter will

---

[14] Aquilex acquired Wheelabrator in August 2002.  See doc. 96, Bennett Dep., pp. 21-22; Evans Dep., pp. 53-54.

[15] See doc. 96, Attach. F.

be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction." <u>Meier v. Sun Int'l Holtels, Ltd.</u>, 288 F.3d 1264, 1272 (11th Cir. 2002) (citing Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure,</u> § 1069.4 (3d ed. 2002) (citations omitted)).  Thus, in order to establish jurisdiction over First Reserve and Aquilex in Florida, plaintiffs must demonstrate that Wheelabrator and Dresser are entities through which First Reserve and Aquilex conduct substantial business activity in Florida.   <u>Meier</u>, 288 F.3d at 1272; <u>Consolidated Dev. Corp.</u>, 216 F.3d at 1293-94.

The determination of the existence of an agency relationship is an issue of fact, with the burden to establish a prima facie case on the plaintiffs.  <u>Enic, PLC v. F. F. South & Co., Inc.</u>, 870 So.2d 888, 891 (Fla. 5th DCA 2004) (citing <u>Product Promotions, Inc. v. Cousteau</u>, 495 F.2d 483, 492 (5th Cir. Tex. 1974)).  Under Florida law, the elements of an agency relationship are: (1) acknowledgment by the principal that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the agent's actions. <u>Id.</u> (citing <u>Goldschmidt v. Holman</u>, 571 So.2d 422, 424, n. 5 (Fla. 1990)).  For purposes of determining whether there is personal jurisdiction over First Reserve and Aquilex in the instant case based on the activities of Wheelabrator and Dresser, the court need only consider the third element of the agency relationship; that is, whether First Reserve and Aquilex exercised sufficient control over Wheelabrator and Dresser to make them the agents of First Reserve and Aquilex.  <u>Id.</u>  For purposes of personal jurisdiction, "[t]he amount of control exercised by the parent must be high and very significant."  <u>Id.</u>  Moreover, what is required for personal jurisdiction based on agency is not merely "some control" but "operational control" by the parent over the subsidiary. <u>General Cigar Holdings, Inc. v. Altadis, S. A.</u>, 205 F.Supp.2d 1335, 1344 (S.D. Fla. 2002) (citing <u>State v. American Tobacco Co.</u> 707 So.2d 851, 856 (Fla. 4th DCA 1998)).  In other words, plaintiffs must show that First Reserve and Aquilex controlled Wheelabrator and Dresser to the extent First Reserve and Aquilex "manifest[ed] no separate corporate interests of [their] own and function[ed] solely to achieve the purposes of

the dominant corporation[s]." [16] Id. (citing American Tobacco Co. 707 So.2d at 851).

The record demonstrates the following connections between First Reserve, Aquilex, Wheelabrator and Dresser: First Reserve and First Reserve Inc., are separate general partnerships that have overlapping principals. [17] First Reserve is the controlling general partner of a limited partnership known as First Reserve GP VIII, LP ("LP VIII"). First Reserve Inc., is the controlling general partner of a limited partnership called First Reserve GP IX, LP ("LP IX"). [18] LP VIII is the controlling general partner of a limited partnership called First Reserve Fund VIII, LP ("Fund

---

[16] Factors which have been considered significant in determining whether a foreign corporation is transacting business in a forum through its subsidiary for purposes of state long-arm statutes are: (1) withdrawal of a foreign company from the jurisdiction where it had been transacting business while establishing a local subsidiary to continue the business and dominating its board of directors; (2) whether the local subsidiary performs all business which the parent itself could perform by its own officials were it present; (3) overlap in boards of directors, officers and significant interchange of personnel between parent and subsidiary; (4) exchange between parent and subsidiary of records and documents; (5) listing of subsidiary as branch or agent of parent or that parent and subsidiary are part of one entity; (6) sending of technical personnel to subsidiary by parent at its expense to assist the latter with its operations; (7) advertising activities by subsidiary to benefit parent and vice versa; and (8) inconvenience to the parent in defending in a forum balanced with the benefits and advantages from its activities within the forum. Hitt v. Nissan Motor Co., Inc., 399 F.Supp. 838, 850 (S.D. Fla. 1975). Application of the aforementioned principles to the record before the court in this case demonstrates unquestionably that such control is not present between these defendants and Dresser and/or Wheelabrator.

[17] According to plaintiffs, First Reserve's management team includes the following principals:

| | |
|---|---|
| William E. Macaulay | Chairman and Chief Executive Officer |
| Ben A. Guill | President |
| John A. Hill | Vice Chairman |
| Thomas R. Denison | Managing Director & Secretary |
| Alex Krueger | Managing Director |
| Mark McComiskey | Vice President |
| Ken Moore | Director |
| Glenn J. Payne | Vice President |
| Jennifer Zarrilli | Vice President & Chief Financial Officer |
| Will Honeybourne | Managing Director |
| Timothy Day | Vice President |
| Joe Bob Edwards | Vice President |
| Craig Jarchow | Director |
| Hardy Murchison | Vice President |
| Tom Sikorski | Managing Director |
| Catia Cesari | Vice President |

(Doc. 96, pp. 9-10; Attach. A). Plaintiffs claim that the management of First Reserve, Inc., includes all of these same individuals. (Id. at p. 10).

[18] Neither First Reserve, Inc., nor First Reserve GP IX, Inc., are parties to this action.

VIII"). LP IX is the controlling general partner of a limited partnership called First Reserve Fund IX, LP ("Fund IX"). Fund VIII and Fund IX jointly own sixty percent of Dresser. Fund IX also owns seventy-seven percent of defendant Aquilex. Aquilex owns one hundred percent of Aquilex Holding Corporation ("Aquilex Holding"). Aquilex Holding owns one hundred percent of defendant WSI and Wheelabrator. According to plaintiffs' theory, given that Aquilex is the sole owner of Aquilex Holding and Aquilex Holding is the sole owner of WSI and Wheelabrator, Aquilex has complete ownership and control over WSI and Wheelabrator. As to Dresser, it appears from the pleadings that plaintiffs' theory is that because First Reserve derives all of its revenue from the companies it controls and because it allegedly manages and controls Dresser by appointing its own principals to the board of Dresser, the activities of Dresser can therefore be imputed to First Reserve.

A review of the aforementioned corporate structure reveals the attenuated nature of the relationship between First Reserve, Aquilex, Wheelabrator and Dresser. Unlike a traditional relationship between a parent corporation and its subsidiary where there is a direct connection between the two, the relationship between the entities in the instant case is several times removed. Wheelabrator's relationship to Aquilex is through Aquilex Holding which is not a named defendant in this case. Dresser's relationship to First Reserve is through Fund VIII which is owned by LP VIII which is owned by First Reserve. Such tenuous and remote connections are markedly inconsistent with plaintiffs' contention that First Reserve and/or Aquilex exercised direct operational control over Wheelabrator and Dresser.

Plaintiffs urge the court to find personal jurisdiction over First Reserve and Aquilex through the activities of Wheelabrator based predominately on an overlap of some officers and/or directors between First Reserve, First Reserve, Inc., Aquilex and Wheelabrator.[19]  Plaintiffs also argue, albeit to a lesser extent, that the

_____

[19] Plaintiffs assert that the principals of First Reserve also serve as the officers and/or directors of the associated companies of First Reserve Inc., Aquilex and Wheelabrator. Specifically, plaintiffs list the following individuals as principals of First Reserve: Thomas Sikorski, James Bennett, Thomas Denison, Alex Krueger, Timothy Day, Bill Varner, William E. Macaulay, Ben A. Guill, Jay Ferguson, Jennifer Zarrilli and Joe S.

occurrence of biweekly meetings between principals of First Reserve, Aquilex and Wheelabrator, and the fact that monthly financial reports of Wheelabrator were provided to two individuals who were principals of First Reserve or Aquilex during 2003 or 2004 are sufficient to establish the requisite degree of control.  However, these facts, even when taken as true and considered in the aggregate, are insufficient  to support a finding of operational control by First Reserve or Aquilex over Wheelabrator for purposes of personal jurisdiction.  See Enic, 870 So.2d at 891-92.  The undisputed evidence shows that no principal of either defendant exercised any control over the regular business operations of Wheelabrator in Florida.[20]

---

Compofelice. As support for their contention that these principals of First Reserve overlap with other entities, plaintiffs claim the following associations among these individuals: in 2001, Macaulay, Guill and Krueger constituted three-fourths of the directors of Aquilex; in 2003 and 2004, Sikorski and Bennett constituted two-thirds of the officers of Aquilex; in 2004, Sikorski, Denison, Krueger and Day constituted two-thirds of the directors of Aquilex.  Plaintiffs further claim that Sikorski and Varner, during their respective tenures as President and CEO of Aquilex also held the position as sole director of Wheelabrator.  (Doc. 96, pp. 13-14). In summary, plaintiffs point to the following principals and their positions as support for their argument that Aquilex exercised operational control over Wheelabrator:

> Thomas Sikorski - Aquilex President and CEO (2003, 2004)
> Aquilex Compensation Committee (2004)
> Sole director of Wheelabrator (2003)

> James Bennett - Aquilex Vice President, CFO, Secretary and Treasurer (2003, 2004)
> Wheelabrator Vice President, Secretary and Treasurer (2003, 2004)

(Doc. 96, Attach. G, Ex. 10; Dep. of Patricia Evans, p. 20).

[20] Patricia Evans, the Controller and corporate representative of Wheelabrator, testified in her deposition as follows:

> Q: Did Mr. Sikorski play any role in the day-to-day operations of Wheelabrator?
> A: No, he didn't.
> Q: Did he make any decisions - company decisions for Wheelabrator?
> A: I don't know if he made - no. I would say no.
>     .....
>
> Q: Did Mr. Sikorski during the course of these [biweekly] meetings ever give his advice on any of the projects?
> A: No.
>     .....
>
> Q: To your knowledge does First Reserve Corporation have any relationship to Wheelabrator?
> A: Not that I know of.

(Doc. 96, Attach. G, Evans Dep., p. 12, 15, 66).  This evidence was submitted by plaintiffs.

Further, there is no evidence that Wheelabrator conducted business solely for the benefit of either First Reserve or Aquilex or that Wheelabrator, First Reserve and Aquilex had any common business purpose.  What the evidence does show however is that neither defendant had any direct connection to the state of Florida at the time of the events giving rise to this action and that Wheelabrator functioned solely to achieve its own business purposes, separate and apart from either First Reserve or Aquilex.  The evidence shows that Wheelabrator's presence in Florida is primarily for the purpose of carrying out its business of developing industrial-scale air pollution control technologies.[21]   Finally, the record reveals no independent acts by First Reserve or Aquilex in Florida that could be interpreted as giving rise to this cause of action.  See Enic, PLC., 870 So.2d at 892.  Based on these facts, the court finds that plaintiffs have failed to establish operational control over Wheelabrator by either First Reserve or Aquilex.

Regarding defendants' purported relationship with Dresser, the record lacks any evidence of control.  Plaintiffs offer no evidence to demonstrate that First Reserve retains any ownership interest in Dresser and the record is to the contrary.[22] The only connection between these two entities is a  joint sixty percent ownership of Dresser by Funds VIII and IX, which are controlled indirectly by First Reserve and First Reserve Inc., respectively.  This connection, to the extent it can be called *a connection*, is attenuated at best.  Regarding the connection between Aquilex and Dresser, although perhaps less attenuated than the relationship between First Reserve and Dresser, the connection is nonetheless still remote.  The only connection between the two is that they share a common owner in Fund IX.  The record is devoid of evidence showing control by Aquilex over Dresser's business operations.  Plaintiffs' efforts at reciting the trade names under which Dresser

---

[21] Wheelabrator was founded in 1913.  (Doc. 96, Attach. G, Evans Aff., p. 45).  Aquilex acquired Wheelabrator in August 2002.  (Doc. 96, Attach. D, Bennett Dep., p. 21).  There is no evidence in the record to show that Wheelabrator's business purpose changed after it was acquired by Aquilex.

[22] See doc. 96, Attach. B, Dep. of Thomas Denison, p. 38 ("First Reserve Corporation owns no direct ownership in Dresser").

markets its products and services and the locations of its business units and distributors in Florida adds nothing to this analysis. Accordingly, because plaintiffs utterly fail in their burden to demonstrate how either First Reserve or Aquilex exercised control over Dresser's business operations in Florida, there is no basis for the court to find that Dresser acted as the agent of either First Reserve or Aquilex in Florida and no basis upon which the court could make a finding of personal jurisdiction over either First Reserve or Aquilex pursuant to Florida's long-arm statute based on the acts of Dresser.

Plaintiffs have failed to establish an agency relationship between First Reserve and/or Aquilex and Wheelabrator and/or Dresser and thus have failed to sustain their burden of establishing personal jurisdiction over either First Reserve or Aquilex. Accordingly, defendants' motions to dismiss for lack of personal jurisdiction will be granted.[23]

**3.    Defendants WSI, First Reserve and Aquilex's Motion to Dismiss on Forum Non Conveniens Grounds[24]**

Defendants WSI, First Reserve and Aquilex move to dismiss the claims against them on forum non conveniens grounds, asserting that the Netherlands is the appropriate forum for this action. In this circuit, a party moving to dismiss on forum non conveniens grounds must demonstrate: (1) that an adequate alternative

---

[23] Because the court has determined there is no basis for personal jurisdiction over First Reserve or Aquilex pursuant to Florida's long-arm statute, it need not consider whether assertion of personal jurisdiction over these defendants would offend due process. See Nida Corp.,118 F.Supp.2d at 1228. Notwithstanding, were such an analysis required, the court would find insufficient minimum contacts between First Reserve or Aquilex and Wheelabrator or Dresser to satisfy the Due Process Clause. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985); Sea Lift, Inc. v. Refinadora Costarricense De Petroleo, S. A., 792 F.2d 989 (11th Cir. 1986). Further, federal case law would not support a finding of continuous and systematic contacts between First Reserve or Aquilex and Wheelabrator or Dresser for purposes of federal due process. See Helicopteros, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Associated Transport Line, Inc. v. Productos Fitosanitaros Proficol El Carmen, 197 F.3d 1070 (11th Cir. 1999).

[24] In a diversity action, the federal court must apply the federal law of forum non conveniens in resolving a motion to dismiss when the alternative forum is a foreign tribunal, rather than the state forum non conveniens law of the district in which the court sits. 17 Moore's Federal Practice, § 111.72 (3d ed. 2002); see also Proyectos Ochimex De Costa Rica, S.A. v. E. I. DuPont de Nemours & Co., 896 F.Supp. 1197, 1200 (M.D. Fla. 1995) (citing Sibaja v. Dow Chemical Co., 757 F.2d 1215, 1219 (11th Cir.) cert. denied 474 U.S. 598, 106 S. Ct. 347, 88 L.Ed.2d 294 (1985)).

forum is available, and (2) that the private and public interest factors weigh in favor of dismissal.  Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1282 (11th Cir. 2001) (citing Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 (11th Cir. 1997)).  The analytic approach to be used by a court in deciding whether to exercise jurisdiction has been explained as follows:

> As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case.  Next, the trial judge must consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice.  If the trial judge finds this balance of private interests to be in equipoise or near equipoise, he must then determine whether or not factors of public interest tip the balance in favor of a trial in a foreign forum.  If he decides that the balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.

La Seguridad v. Transytur Line, 707 F.2d 1304, 1307 (11th Cir. 1983) (quoting Pain v. United Tech. Corp., 637 F.2d 775, 784 ( D.C. Cir. 1980)).  Because the "touchstone of a forum non conveniens analysis is convenience, controlling weight cannot be given to any one factor in the balancing process or the doctrine would lose much of the flexibility that is its essence."  Carnival Cruise Lines, Inc. v. Oy Wartsila AB, 159 B.R. 984, 990 (S.D. Fla. 1993) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, (1981)).

In the instant case, the court must decide as a threshold matter whether an adequate alternative forum is available for litigation of this action.  See Carnival Cruise Lines, 159 B.R. at 990.  A district court may decline to exercise jurisdiction over a case when an adequate alternative forum is available.  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-07 (1947).  Availability and adequacy warrant separate consideration.  Rivas v. Ford Motor Co., 2004 WL 1247018 at *2 (M.D. Fla. 2004) (citing Piper Aircraft, 454 U.S. at 255).  An alternative forum is "available" to a plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred.  Id.  This requirement is ordinarily satisfied when the defendant is amenable to process in the other jurisdiction.  See Piper Aircraft, 454 U.S. at n. 22;

**Gulf Oil Corp.**, 330 U.S. at 506-07.  An alternative forum is "presumed 'adequate' unless the plaintiff makes some showing to the contrary."  **Rivas**, 2004 WL 1247018 at *2 (citing **Leon v. Million Aire, Inc.**, 251 F.3d 1305, 1312 (11th Cir. 2001)).  An adequate forum need not be a perfect forum.  **Id.** (citing **Leon**, 251 F.3d at 1311; **Satz**, 244 F.3d at 1282).

Defendants WSI and Aquilex stipulate that they are amenable to suit and consent to process and personal jurisdiction in the Netherlands. Moreover, plaintiffs do not dispute that the Netherlands is an available alternative forum.[25]  Accordingly, the court finds that the Netherlands is available an as alternative forum in which plaintiffs may litigate their claims against these defendants.[26]  See **Piper Aircraft**, 454 U.S. at n. 22; **Gulf Oil Corp.**, 330 U.S. at 506-07; **see also Rivas**, 2004 WL 1247018 at *2; **Leon**, 251 F.3d at 1312. Once the court has determined that the proposed alternative forum is available and adequate, it must then proceed to balance private and public interests to decide whether the convenience of the parties and the ends of justice would best be served by dismissing the action.  **Rivas**, 2004 WL 1247018 at *7 (citing 17 **Moore's Federal Practice** § 111.74 [3][b] at 111-226.1 (3d ed. 2003)).

---

[25] Plaintiffs assert only that the United States is the *more* appropriate forum.  See doc. 97, p. 12 ("it is...clear that the Plaintiffs' chosen forum, the United States, has a much stronger interest in this action than the alternative forum of the Netherlands.").

[26] First Reserve does not consent to personal jurisdiction in the Netherlands; however, it is not clear to the court that plaintiffs could not obtain service over First Reserve in the Netherlands.  In any event, considering the attenuated nature of plaintiff's claims against First Reserve for the injuries in this case, the potential inability of plaintiffs to obtain service over this defendant in the Netherlands should not affect the court's forum non conveniens analysis.  With the possible exception of plaintiffs' claims against First Reserve, a review of the record shows that the Netherlands is an available forum for plaintiffs' claims in this case.  See Vasquez v. Bridgestone/Firestone, Inc., ("An alternative forum is considered available if the entire case and all parties can come within its jurisdiction.").  In his affidavit, F. G. Van Hees, defendants' expert on Dutch law, states that all of plaintiffs' claims may be heard in the courts of the Netherlands.  Specifically, Van Hees declares that "where Dutch law is concerned, (i) the Plaintiffs all have the procedural ability under Netherlands' procedural law to file their respective claims as specified in the Complaint with a court or courts in the Netherlands and (ii) that the Plaintiffs, if they can substantiate their claims, may receive remedies in accordance with the applicable Dutch legislation, in as far as such legislation applies to the case." (See doc. 6, Ex. C, p. 3).  Among the remedies available under Dutch law is monetary damages.  (Id.).  Accordingly, there is adequate support in the record for the court to find that the Netherlands is an available alternative forum and is presumptively adequate for litigation of plaintiffs' claims against First Reserve.  See Rivas, 2004 WL 1247018 at *2 (citing Leon, 251 F.3d at 1312).  The court notes that plaintiffs do not acknowledge much less dispute Van Hees's affidavit or any statements contained therein in their response to the instant motion.

*Private Interest Factors*

Frequently, most of the private interest factors favor the forum in which the events at issue in the action occurred because the bulk of the witnesses, the physical evidence and necessary third parties are typically located in the same place.  17 Moore's Federal Practice § 111.74 [3][c][ii] (3d ed. 2002)).  Private factors to be considered include: (1) ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses and associated costs; (3) ability to view the premises; and (4) any other practical problems associated with the expeditious conduct of the trial.  Gulf Oil Corp., 330 U.S. at 508.  In weighing the private interests, a plaintiff's choice of forum should rarely be disturbed "unless the balance is strongly in favor of the defendant."  SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1101 (11th Cir. 2004) (citing Gulf Oil Corp., 330 U.S. at 508).  This presumption in favor of plaintiff's initial forum choice in balancing the private interests is at its strongest when the plaintiff is a citizen, resident or corporation of this country.  Id. at 1101 (citing Leon, 251 F.3d at 1311).  The Eleventh Circuit has mandated that district courts "require positive evidence of unusually extreme circumstances and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country."  La Seguridad, 707 F.2d at 1308, n. 7.

Application of these factors to the instant case strongly points toward the Netherlands as a more convenient forum than the Northern District of Florida for litigation of this action.  Regarding the first factor, defendants argue that the Netherlands affords easier access to sources of proof than does Florida because (1) the events giving rise to this action occurred in the Netherlands, (2) the accident site is in the Netherlands, and (3) the bulk of the evidence is located in the Netherlands.  While plaintiffs obviously do not dispute that the accident occurred in the Netherlands, they argue that the case will be decided primarily on expert testimony regarding construction of the scaffolding such that the actual location of the

scaffolding is unimportant.  Plaintiffs assure the court that their experts will be located in the United States and suspect the same for defendants' experts as well.  As a result, plaintiffs insist it would be more convenient for both plaintiffs' and defendants' experts to appear in the United States.  Finally, plaintiffs argue that "where an action is likely to be a battle of experts, the location of the experts is far more important than the location of the physical evidence that the experts review."

The court is unpersuaded by plaintiffs suggestion about the importance of experts in this case on the question of forum non conveniens.  There is nothing to support plaintiffs' assertions that this case is "likely to be a battle of experts" or that it would be more convenient for expert witnesses to appear in the United States.  Plaintiffs have cited no authority to support their assertion that the location of experts witnesses is paramount to the location of the physical evidence they may review.  Given these considerations, the court finds that the Netherlands as a forum for this litigation affords all parties easier access to the factual evidence in the case than does the Northern District of Florida.  The parties' ability to compel recalcitrant witnesses to appear also weighs in favor of the Netherlands. Based on the information known to the court about the accident in this case, the court agrees with defendants that a majority of the fact witnesses are located in the Netherlands and are thus beyond the reach of this court's compulsory process.[27]  See Mercier v. Sheraton Int'l Inc., 981 F.2d 1345, 1355-56 (1st Cir. 1992), cert. denied, 508 U.S. 912 (1993) (fact that only foreign forum could compel testimony of Turkish witness weighed in favor of dismissal, as deposition testimony and letters rogatory, even if available to the American court, would be less than satisfactory substitutes for in-person testimony); Blanco v. Banco Industrial de Venezuela, S.A., 997 F.2d 974, 982 (2d Cir. 1993) (no process available for New York court to compel appearance of Venezuelan witness favored dismissal on forum non conveniens grounds).

_____

[27]  The court's knowledge of the accident comes from the record and statements made by counsel during oral argument.  Also, the court is not aware of any process by which it could compel a Dutch witness to appear in Florida.

The third private factor concerning viewing access of the premises where the fatal accident occurred also favors dismissal.  Although plaintiffs argue that this factor is not of particular importance, as there is no question that the decedents' deaths were the result of the collapse of the scaffolding and that, to plaintiffs' knowledge, the scaffolding is no longer located in the boiler where the accident occurred, the essence of the claim against these defendants is not centered on the design or construction of the scaffolding but instead involves allegations that the defendants negligently maintained a dangerous workplace.[28]  As a consequence, it is plausible that the fact finder would want to examine the work place, or work site.  Thus, to the extent that the work site, the scaffolding and other physical evidence related to the events giving rise to this action are located in the Netherlands, the court finds that this factor favors dismissal.  See  Blanco, 997 F.2d at 983.

The final private factor requires the court to consider any other practical problems associated with the expeditious conduct of a trial in this matter.  As to this factor, defendants claim that the cost of translating evidence and its inability to implead a necessary third party weigh heavily in favor of dismissal.  The court agrees.  The parties would bear significant expense associated with the cost of

---

[28] In their motion, defendants offer the following explanation of their role in the maintenance project at the Amercentrale plant in the Netherlands: Essent Energy ("Essent") is the owner of the Amercentrale power plant in Geertruidenberg, Netherlands.  Essent contracted with CMI for CMI to act as the general contractor for the project.  CMI Energy Services ("CMI Energy"), a subsidiary of CMI, was the onsite contractor for the project.  Aquilex Welding Services, B.V. ("AWS"), a Dutch corporation and European subsidiary of defendant WSI, issued a proposal to provide weld overlay work to CMI Energy for the Amercentrale project which was accepted by CMI Energy.  The welding work to be performed by AWS at the Amercentrale plant required scaffolding.  Hertel, B.V. ("Hertel"), a Dutch corporation, was the subcontractor on the project responsible for, among other things, the erection and maintenance of all necessary scaffolding.  At Essent's request, AWS agreed to assist in grit blasting operations because such work was behind schedule and because AWS's workers were capable of performing the work.  The decedents in the instant case were among the workers assigned to assist in the grit blasting operations.  Decedents were employees of WSI and were supplied to AWS to work on the Amercentrale project.  (See doc. 6).  Essent, CMI Energy, AWS and Hertel are not parties to this action.

In their response, plaintiffs neither dispute these facts, nor do they offer any connection or theory of liability as to First Reserve or Aquilex in relation to the maintenance project at the Amercentrale plant.  Rather, they argue generally that "[a]s a result of the negligence of Defendants and others, the decedents died while performing work on behalf of the Defendants."  (Doc. 97, p. 8).  As to WSI, although plaintiffs do allege this defendant negligently designed the scaffolding, the allegations seem more centered on WSI's alleged failure to adequately inspect the work site at the Amercentrale plant.

translating evidence from Dutch to English.[29]   Moreover, were the case to remain in this court, defendants presumably would be unable to implead Hertel, the Dutch corporation responsible for the erection and maintenance of the scaffolding on which decedents were working at the time of its collapse, and arguably a necessary and indispensable party to this action.  Defendants inability to implead a third party against whom they could bring a cross-claim or from whom they could seek indemnity or contribution if they were found liable would ostensibly result in piecemeal and duplicative litigation. Such circumstances weigh in favor of dismissal. See Hodson v. A.H. Robins Co., Inc., 528 F.Supp. 809, 822 (E.D.Va.1981), aff'd, 715 F.2d 142 (4th Cir.1983) (citing Pain, 637 F.2d at 790; Fitzgerald v. Texaco Inc., 521 F.2d 448, 453 (2d Cir.1975)); Allstate Life Ins. Co. v. Linter, Group, Ltd., 994 F.2d 996, 1002 (2d Cir.), cert. denied, 510 U.S. 945 (1993); Kristoff v. Otis Elevator Co., 1997 WL 67797 at *3 (citing Piper Aircraft, 454 U.S. at 259 (the defendant's inability to implead third parties is a reason for granting a forum non conveniens motion));  Jennings v. Boeing Co., 677 F.Supp. 803, 804-05 (E.D.Pa.1987), aff'd 838 F.2d 1206 (3d Cir.1988) ("the problems posed by the inability to implead potential third-party defendants clearly supported" forum non conveniens dismissal where joinder was crucial to the defense); Tonkon v. Denny's Inc., 1987 WL 8837 *3 (E.D.Pa.1987), aff'd 835 F.2d 284 (3d Cir.1987) (defendant's ability to initiate separate indemnity or contribution action in a foreign court "does not diminish the significance of the fact that such an indemnity or contribution action could not be maintained in this country"); Cohen v. Holiday Inns, Inc., 1991 WL 983 *4 (E.D.Pa.1991), aff'd 932 F.2d 959 (3d Cir.1991)("When feasible, all claims arising out of an accident should be resolved in one proceeding to conserve judicial resources

---

[29] In this regard, the court takes note that an investigation into this accident is being conducted by the Health and Safety Inspectorate of the Netherlands and the Public Prosecutor of the Breda District Public Prosecutor's Office.  (See doc. 6, Decl. of Steven C. Smith, p. 7, ¶¶ 19, 20).  As part of these investigations, the local authorities have interviewed witnesses in the Netherlands.  (Id. at ¶ 20).  To the extent that plaintiffs have made much of these investigations by Dutch authorities and apparently intend to inject any damaging findings from these investigations into this litigation, the potential cost of translating investigative reports and/or witness statements certainly weighs in favor of dismissal.

and avoid the possibility of inconsistent judgments.")).  Accordingly, the court finds that all of the private interest factors support dismissal of this case on forum non conveniens grounds.

*Public Interest Factors*

The central question a court must answer when considering and weighing the public's interest in having the case litigated in one forum versus another is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it.  <u>Seguros Comercial Americas, S.A. De C.V. v. American President Airlines, Ltd.</u>, 933 F.Supp. 1301, 1314 (S.D. Tex. 1996). Public factors to be considered in addressing a forum non conveniens motion include: (1) administrative congestion resulting from cases being tried at a site other than that of their origin; (2) the burden of jury duty on a community that has no relationship to the cause of action; (3) the chosen forum's interest in the dispute; (4) the alternative forum's interest in the dispute; and (5) the difficulties associated with applying foreign law.  <u>Gulf Oil Corp.</u>, 330 U.S. at 508-09.

Defendants argue that this court sitting in the Northern District of Florida has virtually no interest in adjudicating the parties' dispute in this case.  They contend rather that the Netherlands has an important interest in resolving claims arising from an accident in that country against corporate entities conducting business within its borders.  Additionally, defendants assert that if the case remains here this court would inevitably be forced to apply Dutch law.[30]  Alternatively, plaintiffs argue that the Northern District of Florida, their choice of forum, has a much stronger interest in this case than does the Netherlands because it is an action by United States

---

[30]  Defendants note that under the significant relationship test, the substantive law of the place of injury (Netherlands) would apply unless it is shown that Florida has a more significant relationship to the occurrence or the parties in this action.  <u>See</u> <u>Bishop</u>, 389 So.2d 999.  In asserting that this analysis would result in application of Dutch law, defendants point to the following facts: that the operative events occurred in the Netherlands; the corporations with contractual duties on the project on which decedents were working are Dutch corporations; the accident investigation is being conducted by local Dutch authorities; Hysmith is the only Florida resident; Pope is a Nebraska resident; and none of the defendants are Florida corporations. Given these facts, defendants assert that Florida does not have a significant relationship to this case and therefore Dutch law would be applied by the court.

citizens against United States defendants relating to the deaths of two United States citizens. Plaintiffs suggest that a jury from this forum would have a relationship to the case. Plaintiffs also maintain that the law of the United States rather than that of the Netherlands would apply. Finally, while plaintiffs acknowledge this court's busy docket, they state that this factor alone is insufficient to warrant dismissal.

A review of the public interest factors favors dismissal in this case. Although the parties' assessment of the court's busy docket is accurate, this factor notwithstanding, the instant forum bears little connection to this litigation. Other than the fact that one plaintiff happens to be a resident of Florida, there is no connection between Florida and this case. Instead, the heart of this law suit is in the Netherlands and involves the deaths of two American citizens in that country as a result of the collapse of scaffolding erected and maintained by a Dutch corporation at a Dutch power plant in the Netherlands, which was operated by a Dutch corporation. The fact that this case lacks any notable, substantive connection to this forum suggests that it is inappropriate to burden this community with the "enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried []here." de Melo v. Lederle Laboratories, Div. of American Cyanamid Corp., 801 F.2d 1058, 1064 (8th Cir. 1986) (citing Piper Aircraft, 454 U.S. at 261).

Finally, without engaging in a full conflict of laws analysis, the court finds it likely that it would be obliged to apply Dutch law to this case in whole or in part if it retained the case. Telephone Systems Intern., Inc. v. Network Telecom PLC, 303 F.Supp.2d 377, 384 (S.D.N.Y.,2003); see also Bishop, 389 So.2d 999.[31] There is a strong interest in resolving a dispute "in a forum that is at home with the law that must govern the action." Gulf Oil Corp., 330 U.S. at 509. The single connection between Florida and this action is far outweighed by the interests of the Netherlands in having a Dutch court apply local Dutch law to the liabilities associated with a work

---

[31] The likelihood that a jury in this forum would have to read and interpret Dutch law and/or Dutch workplace regulations further supports a finding that this case is more appropriately litigated in the Netherlands.

site accident involving the collapse of scaffolding erected by a Dutch corporation at a Dutch power plant located in the Netherlands.  See  Kristoff, 1997 WL 67797 at *5. In view of the local interest considerations of the Dutch forum, the potential application of Dutch law in this forum and the limited interest of the State of Florida, the public interest factors also favor dismissal of this action.

In conclusion, the court finds that defendants have met their burden of establishing the Netherlands as an adequate alternative forum where plaintiffs may bring their claims, and that consideration of the plaintiffs' choice of forum, as well as the interests of the parties and the public, weighs in favor of dismissal of this action.[32]  Accordingly, defendants' motion to dismiss on forum non conveniens grounds will be granted.

**4.      *CMI and CMI Welding Services Motion (1) to Quash Service, (2) to Dismiss for Lack of Personal Jurisdiction or, in the alternative, (3) to Dismiss on Grounds of Forum Non Conveniens***

Defendants Cockerill Maintenance and Ingenierie ("CMI") and CMI Welding Services ("CMI Welding")[33] move this court to quash service and dismiss the claims against them pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. Defendants claim that service must be quashed because plaintiffs have failed to properly serve them in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Service Convention") or any other means permitted under Rule 4 of the Federal Rules of Civil Procedure.  Upon review of the record, the court finds that defendants' motion is due to be granted.

---

[32] The court finds that this case is one of those rare cases which presents unusually extreme circumstances which justify favoring a foreign forum over a plaintiff's choice of forum in the United States. The court is confident that material injustice would occur should the litigation proceed in this court as opposed to the Netherlands.

[33] It appears from the record that plaintiffs have not correctly identified these corporate entities.  See affidavit of Yves Honhon, doc. 87, p. 2, ¶ 3 and Paul Neirnck, doc. 87, pp. 1-2, ¶ 3.  Based on the description provided in the amended complaint, it appears that plaintiffs are describing CMI S.A. and CMI Welding S.A. However, for purposes of addressing the instant motion, the court will refer to these entities as identified by the plaintiffs in their amended complaint.

CMI and CMI Welding[34] are both Belgian registered public limited companies with their principal offices in Seraing, Belgium.[35]   On March 3, 2005, CMI was informed by Michael Blount, Secretary of CMI America, Inc. ("CMI America"),[36] that CMI America had received a summons and complaint addressed to "CMI Welding Services c/o CMI America, Inc.".   A copy of that summons and complaint were forwarded to CMI and CMI Welding.  Upon review of the docket sheet in this case, CMI also learned that plaintiffs purported to have served a summons and complaint on "Cockerill Mechanical Industries, c/o The Corporation Trust Co., 1209 Orange Street, Wilmington, Delaware 19801."   Neither CMI nor CMI Welding have been formally served with a copy of the summons and complaint in this case.[37]   Further, neither defendant has ever appointed The Corporation Trust Co., or CMI America as their agent for service of process.  Defendants argue that plaintiffs' attempts at service are insufficient to institute legal proceedings against them in this case.

When a defendant requests both dismissal of the action and, in the alternative, quashing of service of process, or seeks both forms of relief, the court has broad discretion either to dismiss the case or retain it but quash the service. Gordon v. John Deere Co., 320 F.Supp. 293, 296 (N.D. Fla. 1970) (citing 5 Wright and Miller, Federal Practice and Procedure, § 1354).  Florida state courts "have consistently held that statutes relating to substituted service of process ... must be strictly construed; and that the burden of proof to sustain the validity of substituted service of process rests upon the person seeking to invoke the provisions of such statutes." Vega Glen v. Club Mediterrranee, S.A., 359 F.Supp.2d 1352, 1355 (S.D. Fla. 2005) (citing Elmex Corp. v. Atlantic Fed. Sav. & Loan Ass'n, 325 So.2d 58, 61 (Fla. 4th DCA

---

[34] CMI Welding is fifty percent owned by CMI and fifty percent owned by Defendant WSI.

[35] These facts are derived from defendants' motion and attached affidavits and are undisputed by plaintiffs.

[36] CMI America, Inc., ("CMI America") is an affiliate of CMI that operates in the United States. CMI and CMI America are distinct corporations.  (Doc. 91, Honhon Aff. p. 2, ¶ 4).  Each entity has its own board of directors and maintains its own corporate records.  CMI America is not a party to this action.

[37] Nor have they been served with process in their official national language of French.

1976) (citations omitted)).  The plaintiff bears the burden to plead and prove facts that "clearly justify as a matter of law the applicability of the substituted service statutes in order to meet a legal challenge to such service." Id. (citations omitted).

Pursuant to Rule 4 of the Federal Rules of Civil Procedure, in order to serve a foreign corporation that is not within any judicial district of the United States, service must be effected by "any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  Fed.R.Civ.P. 4(f)(1); see also Vega Glen, 359 F.Supp.2d at 1355.  Article 1 of the Hague Service Convention states that the Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."  See id. (citing Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988); Hague Service Convention, 20 U.S. T. at 362).  Whether an "occasion ... for service abroad" exists depends on the internal law of the forum state.  Vega Glen, 359 F.Supp.2d at 1356.  "In each case, a court must determine whether the forum's state law requires the sending of process abroad. 'If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies.'" McClenon v. Nissan Motor Corp., 276 F.Supp. 822, 824 (N.D. Fla. 1989) (citation omitted).  Pursuant to the Constitution's Supremacy Clause, the Hague Service Convention preempts inconsistent methods of service prescribed by state law, and compliance with its provisions is mandatory in all cases to which it applies. See U.S. Const., Art. VI; Vega Glen, 359 F.Supp.2d at 1356; Schlunk 486 U.S. at 705, 108 S.Ct. 2104.

Under Florida law, service on a foreign corporation allegedly doing business within the State of Florida, requires a plaintiff to serve the summons and complaint on the Florida Secretary of State and on the foreign corporation at its offices abroad. See Fla. Stat. §§ 48.181(1), 48.161; Vega Glen, 359 F.Supp.2d at 1356; McClenon, 276 F.Supp. at 825.  In McClenon, the court explained that because § 48.161 requires the

serving of notice of process directly on a foreign defendant in addition to service of process upon the Florida Secretary of State, Florida's procedure encompasses the requirement under the Hague Service Convention for "transmittal of documents abroad." Vega Glen, 359 F.Supp.2d at 1356.  In this case, the court finds that the Hague Service Convention applies and both CMI and CMI Welding must be served pursuant to its directives, which would require service in Belgium.[38]

It is undisputed that defendants were not served with process in Belgium. Plaintiffs, however, argue that service on defendants was nonetheless proper through substituted service on CMI's affiliate CMI America.[39]  Florida law provides that if a nonresident defendant does business in this forum through "brokers, jobbers, wholesalers, or distributors," then service on such jobber, distributor, etc., is proper as service on an agent for process.  See McClenon, 726 F.Supp. at 826; Fla. Stat. §§ 48.181(1), (3).[40]  Thus, if CMI America is deemed to be an agent for service of process of CMI and CMI Welding then plaintiffs' service on these defendants through CMI America would be proper.  Id.; Vega Glen, 359 F.Supp.2d at 1356.  The fact that a party served within the state is a wholly owned subsidiary of another company does not, in and of itself, support substituted service under Florida law. McClenon, 726 F.Supp. at 826 (citing Mac Millan-Bloedel, Ltd. v. Canada, 391 So.2d 749, 751 (Fla. 5th DCA 1980); Volkswagenwerk Atkiengelselischaft v. McCurdy, 340 So.2d 544, 546 (Fla. 1st DCA 1976)).  Instead, similar to the agency analysis for personal jurisdiction, plaintiffs must show that the parent corporation "exercised such a degree of control over its subsidiary that the activities of the subsidiary were

---

[38] The United States and Belgium are signatories to the Hague Service Convention.  See Hague Service Convention, 20 U.S.T. 361 (reprinted in 28 U.S.C.A. F.R.Civ.P. 4, note at 138 (West 2005)).

[39] See doc. 87, Neirinck Aff., p. 2, ¶ 4 (CMI has an affiliate, CMI America).

[40] Section 48.181(2) of the Florida Statutes provides for service of process on a particular agent designated by a foreign corporation that is doing business in Florida.  Fla. Stat. § 48.181(2).  In this case, service was attempted upon CMI America.  According to defendants, CMI America has not been designated as an agent for service of process by either CMI or CMI Welding and plaintiffs present no argument or evidence to the contrary.  (See doc. 87, Honhon Aff., pp. 1-2, ¶ 2; Neirinck Aff., p. 2, ¶ 4).  Thus, this provision of § 48.181 is inapplicable in the instant case.  See Vega Glen, 359 F.Supp.2d at 1356, n. 4.

in fact the activities of the parent within the state ...".  **McClenon**, 726 F.Supp. at 826 (citing **McCurdy**, 340 So.2d at 546; **Mac Millan-Bloedel**, 391 So.2d at 751).

Plaintiffs claim that they served CMI America because CMI "asserts a degree of control over CMI America and CMI Welding such that the activities of CMI America are in fact those of CMI and CMI Welding."[41]  (**Id.**)  However, there is no evidence to show that CMI America was an alter ego of CMI or CMI Welding or that either defendant controlled CMI America sufficient to support a finding that CMI America was an agent of either defendant.  **See** **Vega Glen**, 359 F.Supp.2d at 1357.  Rather, plaintiffs have merely relied on CMI America's affiliation with CMI to attempt proper substituted service on the defendants.  Such reliance is misplaced and plaintiffs have not sustained their burden of proving proper service of process on either defendant.  **See** **id.**, at 1355; **see** **also** **McClenon**, 726 F.Supp. at 826-27.  Based on the foregoing, defendants' motion to quash will be granted.[42]

Accordingly, it is hereby ordered:

1.  Defendant WSI's Motion To Dismiss For Lack Of Subject Matter Jurisdiction (doc. 4) is GRANTED;

2.  Defendants First Reserve and Aquilex's Motion To Dismiss For Lack Of Personal Jurisdiction (doc. 5 as amended by doc. 40) is GRANTED;

3.  Defendants WSI, First Reserve and Aquilex's Motion To Dismiss On Forum Non Conveniens Grounds (doc. 6) is GRANTED;

4.  Defendants CMI and CMI Welding's Motion To Quash Service (doc. 87 as modified by doc. 91) and Motion To Dismiss On Forum Non Conveniens grounds are GRANTED.  Defendants CMI and CMI Welding's Motion To Dismiss For Lack Of Personal Jurisdiction is DENIED as moot; and

---

[41] Plaintiffs agree, however, that they have not made any such allegations in their complaint, and they concede that service was "technically insufficient."  (See doc. 125, p. 22).

[42] Although the court would typically afford a plaintiff the opportunity to properly serve a defendant under these circumstances, in this case, because the court has determined that the Northern District of Florida is not the appropriate forum for disposition of the case and has granted defendants First Reserve's and Aquilex's Motion To Dismiss on Forum Non Conveniens Grounds, CMI and CMI Weldings' Motion To Dismiss On Forum Non Conveniens Grounds is likewise due to be granted for the same reasons.  As a result, any further efforts to serve defendants in this law suit would be futile.

5.    Plaintiffs' Corrected Motion for Leave to Supplement Their Supplemental Brief Regarding Worker's Compensation Exclusivity (doc. 144) is DENIED as moot.

6.    The Clerk of Court is directed to enter judgment in favor of Defendants. Plaintiffs shall take nothing by this action and hence go forth without day.  The Clerk of Court is further directed to CLOSE this case.

ORDERED on this 2nd day of December, 2005.

s/ *M. Casey Rodgers*

M. CASEY RODGERS
United States District Judge